(Slip Opinion)                OCTOBER TERM, 2006                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CAREY, WARDEN *v.* MUSLADIN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 05–785.   Argued October 11, 2006—Decided December 11, 2006

At respondent Musladin's murder trial, members of the victim's family sat in the front row of the spectators' gallery wearing buttons displaying the victim's image.  The trial court denied Musladin's motion to order the family members not to wear the buttons.  The California Court of Appeal upheld Musladin's conviction, stating that he had to show actual or inherent prejudice to succeed on the buttons claim; citing *Holbrook* v. *Flynn*, 475 U. S. 560, as providing the test for inherent prejudice; and ruling that he had not satisfied that test.  The Federal District Court denied Musladin's habeas petition, but the Ninth Circuit reversed and remanded, finding that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U. S. C. §2254(d)(1), as determined by this Court in *Estelle* v. *Williams*, 425 U. S. 501, and *Flynn*, *supra*.

*Held:* The Ninth Circuit improperly concluded that the California Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law as determined by this Court.  Pp. 3–7.

   (a) Because "clearly established Federal law" in §2254(d)(1) "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," *Williams* v. *Taylor*, 529 U. S. 362, 412, federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings.  Pp. 3–4.

   (b) This Court addressed the effect of courtroom practices on defendants' fair-trial rights in *Williams*, in which the State compelled the defendant to stand trial in prison clothes, and *Flynn*, in which the State seated uniformed state troopers in the row of spectators' seats immediately behind the defendant at trial.  In both cases, which dealt

with government-sponsored practices, the Court noted that some practices are so inherently prejudicial that they must be justified by an "essential state" policy or interest. *E.g., Williams*, *supra*, at 505. Pp. 4–5.

   (c) In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in this Court's jurisprudence. The Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial or applied the test for inherent prejudice in *Williams* and *Flynn* to spectators' conduct. Indeed, part of that test— asking whether the practices furthered an essential *state* interest— suggests that those cases apply only to state-sponsored practices. Reflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' spectator-conduct claims. Given the lack of applicable holdings from this Court, it cannot be said that the state court "unreasonably appli[ed] . . . clearly established Federal law." Pp. 5–7.

427 F. 3d 653, vacated and remanded.

   THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, GINSBURG, BREYER, and ALITO, JJ., joined. STEVENS, J., KENNEDY, J., and SOUTER, J., filed opinions concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–785

THOMAS L. CAREY, WARDEN, PETITIONER *v.*
MATHEW MUSLADIN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[December 11, 2006]

JUSTICE THOMAS delivered the opinion of the Court.

This Court has recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial. *Estelle* v. *Williams*, 425 U. S. 501, 503–506 (1976); *Holbrook* v. *Flynn*, 475 U. S. 560, 568 (1986). In this case, a state court held that buttons displaying the victim's image worn by the victim's family during respondent's trial did not deny respondent his right to a fair trial. We must decide whether that holding was contrary to or an unreasonable application of clearly established federal law, as determined by this Court. 28 U. S. C. §2254(d)(1). We hold that it was not.

I

On May 13, 1994, respondent Mathew Musladin shot and killed Tom Studer outside the home of Musladin's estranged wife, Pamela. At trial, Musladin admitted that he killed Studer but argued that he did so in self-defense. A California jury rejected Musladin's self-defense argument and convicted him of first-degree murder and three related offenses.

During Musladin's trial, several members of Studer's

family sat in the front row of the spectators' gallery. On at least some of the trial's 14 days, some members of Studer's family wore buttons with a photo of Studer on them.[1] Prior to opening statements, Musladin's counsel moved the court to order the Studer family not to wear the buttons during the trial. The court denied the motion, stating that it saw "no possible prejudice to the defendant." App. to Pet. for Cert. 74a.

Musladin appealed his conviction to the California Court of Appeal in 1997. He argued that the buttons deprived him of his Fourteenth Amendment and Sixth Amendment rights. At the outset of its analysis, the Court of Appeal stated that Musladin had to show actual or inherent prejudice to succeed on his claim and cited *Flynn*, *supra*, at 570, as providing the test for inherent prejudice. The Court of Appeal, quoting part of *Flynn*'s test, made clear that it "consider[ed] the wearing of photographs of victims in a courtroom to be an 'impermissible factor coming into play,' the practice of which should be discouraged." App. to Pet. for Cert. 75a (quoting *Flynn*, *supra*, at 570). Nevertheless, the court concluded, again quoting *Flynn, supra*, at 571, that the buttons had not "branded defendant 'with an unmistakable mark of guilt' in the eyes of the jurors" because "[t]he simple photograph of Tom Studer was unlikely to have been taken as a sign of anything other than the normal grief occasioned by the loss of [a] family member." App. to Pet. for Cert. 75a.

At the conclusion of the state appellate process, Musladin filed an application for writ of habeas corpus in federal district court pursuant to §2254. In his application, Musladin argued that the buttons were inherently

----

[1] The record contains little concrete information about the buttons. The buttons were apparently two to four inches in diameter and displayed only a photograph of Studer. It is not clear how many family members wore the buttons or how many days of the trial they wore them.

prejudicial and that the California Court of Appeal erred by holding that the Studers' wearing of the buttons did not deprive him of a fair trial. The District Court denied habeas relief but granted a certificate of appealability on the buttons issue.

The Court of Appeals for the Ninth Circuit reversed and remanded for issuance of the writ, finding that under §2254 the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." §2254(d)(1). According to the Court of Appeals, this Court's decisions in *Williams* and *Flynn* clearly established a rule of federal law applicable to Musladin's case. *Musladin* v. *Lamarque*, 427 F. 3d 653, 656–658 (2005). Specifically, the Court of Appeals cited its own precedent in support of its conclusion that *Williams* and *Flynn* clearly established the test for inherent prejudice applicable to spectators' courtroom conduct. 427 F. 3d, at 657–658 (citing *Norris* v. *Risley*, 918 F. 2d 828 (CA9 1990)). The Court of Appeals held that the state court's application of a test for inherent prejudice that differed from the one stated in *Williams* and *Flynn* "was contrary to clearly established federal law and constituted an unreasonable application of that law." 427 F. 3d, at 659–660. The Court of Appeals denied rehearing en banc. 427 F. 3d 647 (2005). We granted certiorari, 547 U. S. \_\_\_ (2006), and now vacate.

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1219:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

claim—

"(1) resulted in a decision that was contrary to, or in-
volved an unreasonable application of, clearly estab-
lished Federal law, as determined by the Supreme
Court of the United States." 28 U. S. C. §2254(d)(1).

In *Williams* v. *Taylor*, 529 U. S. 362 (2000), we explained
that "clearly established Federal law" in §2254(d)(1) "re-
fers to the holdings, as opposed to the dicta, of this Court's
decisions as of the time of the relevant state-court deci-
sion." *Id.,* at 412. Therefore, federal habeas relief may be
granted here if the California Court of Appeal's decision
was contrary to or involved an unreasonable application of
this Court's applicable holdings.

### A

In *Estelle* v. *Williams* and *Flynn*, this Court addressed
the effect of courtroom practices on defendants' fair-trial
rights. In *Williams*, the Court considered "whether an
accused who is compelled to wear identifiable prison cloth-
ing at his trial by a jury is denied due process or equal
protection of the laws." 425 U. S., at 502. The Court
stated that "the State cannot, consistently with the Four-
teenth Amendment, compel an accused to stand trial
before a jury while dressed in identifiable prison clothes,"
*id.,* at 512, but held that the defendant in that case had
waived any objection to being tried in prison clothes by
failing to object at trial, *id.,* at 512–513.

In *Flynn*, the Court addressed whether seating "four
uniformed state troopers" in the row of spectators' seats
immediately behind the defendant at trial denied the
defendant his right to a fair trial. 475 U. S., at 562. The
Court held that the presence of the troopers was not so
inherently prejudicial that it denied the defendant a fair
trial. *Id.,* at 571. In reaching that holding, the Court
stated that "the question must be . . . whether 'an unac-
ceptable risk is presented of impermissible factors coming

into play.'" *Id.*, at 570 (quoting *Williams*, *supra*, at 505).

Both *Williams* and *Flynn* dealt with government-sponsored practices: In *Williams*, the State compelled the defendant to stand trial in prison clothes, and in *Flynn*, the State seated the troopers immediately behind the defendant. Moreover, in both cases, this Court noted that some practices are so inherently prejudicial that they must be justified by an "essential state" policy or interest. *Williams, supra*, at 505 (concluding that the practice "further[ed] no essential state policy"); *Flynn, supra*, at 568–569 (holding that the practice was not of the sort that had to be justified by an "essential state interest").

B

In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial.[2] And although the Court articulated the test for inherent prejudice that applies to state conduct in *Williams* and *Flynn*, we have never applied that test to spectators' conduct. Indeed, part of the legal test of *Williams* and *Flynn*—asking whether the practices furthered an essential *state* interest—suggests that those cases apply only to state-sponsored practices.

Reflecting the lack of guidance from this Court, lower

---

[2] This Court has considered cases in which the proceedings were a sham or were mob dominated. See *Moore* v. *Dempsey*, 261 U. S. 86, 91 (1923) (describing allegations that "the whole proceeding [was] a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong"); *Frank* v. *Mangum*, 237 U. S. 309, 324–325 (1915) ("[T]he disorder in and about the court-room during the trial and up to and at the reception of the verdict amounted to mob domination, that not only the jury but the presiding judge succumbed to it").

courts have diverged widely in their treatment of defendants' spectator-conduct claims. Some courts have applied *Williams* and *Flynn* to spectators' conduct. *Norris* v. *Risley,* 918 F. 2d, at 830–831 (applying *Williams* and *Flynn* to hold spectators' buttons worn during a trial deprived the defendant of a fair trial); *In re Woods*, 154 Wash. 2d 400, 416–418, 114 P. 3d 607, 616–617 (2005) (en banc) (applying *Flynn* but concluding that ribbons worn by spectators did not prejudice the defendant). Other courts have declined to extend *Williams* and *Flynn* to spectators' conduct. *Billings* v. *Polk*, 441 F. 3d 238, 246–247 (CA4 2006) ("These precedents do not clearly establish that a defendant's right to a fair jury trial is violated whenever an article of clothing worn at trial arguably conveys a message about the matter before the jury"); *Davis* v. *State*, No. 07–03–0457–CR, 2006 WL 1211091, *6–7 (Tex. App., May 3, 2006) ("Appellant does not cite any authority holding the display of this type of item by spectators creates inherent prejudice"). Other courts have distinguished *Flynn* on the facts. *Pachl* v. *Zenon*, 145 Ore. App. 350, 360, n. 1, 929 P. 2d 1088, 1093–1094, n. 1 (1996) (in banc). And still other courts have ruled on spectator-conduct claims without relying on, discussing, or distinguishing *Williams* or *Flynn*. *Buckner* v. *State*, 714 So. 2d 384, 388–389 (Fla. 1998) *(per curiam); State* v. *Speed*, 265 Kan. 26, 47–48, 961 P. 2d 13, 29–30 (1998); *Nguyen* v. *State*, 977 S. W. 2d 450, 457 (Tex. App. 1998); *Kenyon* v. *State*, 58 Ark. App. 24, 33–35, 946 S. W. 2d 705, 710–711 (1997); *State* v. *Nelson,* 96–0883, pp. 9–10 (La. App. 12/17/97), 705 So. 2d 758, 763.

Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." §2254(d)(1). No holding of this Court required the California Court of Appeal to apply the test of

*Williams* and *Flynn* to the spectators' conduct here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

## III

The Court of Appeals improperly concluded that the California Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law as determined by this Court. For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 05–785

————

## THOMAS L. CAREY, WARDEN, PETITIONER *v.* MATHEW MUSLADIN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[December 11, 2006]

JUSTICE STEVENS, concurring in the judgment.

In *Williams* v. *Taylor*, 529 U. S. 362 (2000), this Court issued two opinions announcing two separate holdings. In Part II–B of Justice O'Connor's opinion, the Court held that an incorrect application of federal law was not necessarily an "'unreasonable application of . . . clearly established Federal law'" within the meaning of 28 U. S. C. §2254(d)(1). 529 U. S., at 409–413. In Parts III and IV of my opinion, in which Justice O'Connor joined, the Court held that the Virginia Supreme Court's rejection of the petitioner's claim that he had received ineffective assistance of counsel was both contrary to and an unreasonable application of law as determined by our earlier opinion in *Strickland* v. *Washington*, 466 U. S. 668 (1984). *Williams*, 529 U. S., at 390–398.

In *Strickland*, we held that the petitioner had not been denied the effective assistance of counsel and upheld his sentence of death. 466 U. S., at 700. While our ultimate *holding* rejected the petitioner's ineffective assistance claim, the reasoning in our opinion (including carefully considered *dicta*) set forth the standards for evaluating such claims that have been accepted as "clearly established law" for over 20 years. See *Williams*, 529 U. S., at 391. Nevertheless, in a somewhat ironic dictum in her *Williams* opinion, Justice O'Connor stated that the statu-

tory phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.,* at 412. That dictum has been repeated in three subsequent opinions in which a bare majority of the Court rejected constitutional claims that four of us would have upheld.* Because I am persuaded that Justice O'Connor's dictum about dicta represents an incorrect interpretation of the statute's text, and because its repetition today is wholly unnecessary, I do not join the Court's opinion.

Virtually every one of the Court's opinions announcing a new application of a constitutional principle contains some explanatory language that is intended to provide guidance to lawyers and judges in future cases. See, *e.g., Crawford* v. *Washington*, 541 U. S. 36 (2004); *Strickland*, 466 U. S. 668; *Miranda* v. *Arizona*, 384 U. S. 436 (1966); see also *Marbury* v. *Madison*, 1 Cranch 137 (1803). It is quite wrong to invite state court judges to discount the importance of such guidance on the ground that it may not have been strictly necessary as an explanation of the Court's specific holding in the case. Cf. *County of Allegheny* v. *American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U. S. 573, 668 (1989) (KENNEDY, J., concurring in judgment in part and dissenting in part); ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also their explications of the governing rules of law"); *Sheet Metal Workers* v. *EEOC*, 478 U. S. 421, 490 (1986) (O'Connor, J., concurring in part and dissenting in part) ("Although technically dicta, . . . an important part of the Court's rationale for the result that it reache[s] is entitled to

---

*See *Yarborough* v. *Alvarado*, 541 U. S. 652, 660–661 (2004); *Lockyer* v. *Andrade*, 538 U. S. 63, 71 (2003); *Tyler* v. *Cain*, 533 U. S. 656, 664 (2001).

greater weight . . .").  The text of AEDPA itself provides sufficient obstacles to obtaining habeas relief without placing a judicial thumb on the warden's side of the scales.

Ultimately, however, my reasons for joining the Court's judgment in this case are essentially the same as those expressed by JUSTICE SOUTER, with one caveat.  In my opinion, there is no merit whatsoever to the suggestion that the First Amendment may provide some measure of protection to spectators in a courtroom who engage in actual or symbolic speech to express any point of view about an ongoing proceeding.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–785

_____

## THOMAS L. CAREY, WARDEN, PETITIONER *v.* MATHEW MUSLADIN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[December 11, 2006]

JUSTICE KENNEDY, concurring in the judgment.

Trials must be free from a coercive or intimidating atmosphere. This fundamental principle of due process is well established. It was recognized in *Frank* v. *Mangum*, 237 U. S. 309 (1915), though the Court credited the determination of the state court and granted no relief; and it was the square holding in *Moore* v. *Dempsey*, 261 U. S. 86 (1923), though the Court remanded for factfinding rather than for a new trial. The disruptive presence of the press required reversal in *Sheppard* v. *Maxwell*, 384 U. S. 333, 355 (1966), where "newsmen took over practically the entire courtroom, hounding most of the participants in the trial," and *Estes* v. *Texas*, 381 U. S. 532, 550 (1965), where the presence of cameras distracted jurors throughout the proceedings.

The rule against a coercive or intimidating atmosphere at trial exists because "we are committed to a government of laws and not of men," under which it is "of the utmost importance that the administration of justice be absolutely fair and orderly," and "the constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding . . . culminating with a trial 'in a courtroom presided over by a judge.'" *Cox* v. *Louisiana*, 379 U. S. 559, 562 (1965) (quoting *Rideau* v. *Louisiana*, 373 U. S. 723, 727 (1963)) (finding a statute did not

on its face violate First Amendment rights where it pro-
hibited picketing in courthouses). Cf. *Wood* v. *Georgia*,
370 U. S. 375 (1962); *Turner* v. *Louisiana*, 379 U. S. 466
(1965).

The rule settled by these cases requires a court, on
either direct or collateral review, to order a new trial when
a defendant shows his conviction has been obtained in a
trial tainted by an atmosphere of coercion or intimidation
similar to that documented in the foregoing cases. This
would seem to be true whether the pressures were from
partisans, or, as seems to have been the case in *Sheppard*,
from persons reacting to the drama of the moment who
created an environment so raucous that calm deliberation
by the judge or jury was likely compromised in a serious
way. If, in a given case, intimidation of this nature was
brought about by the wearing of buttons, relief under the
Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA) would likely be available even in the absence of
a Supreme Court case addressing the wearing of buttons.
While general rules tend to accord courts "more leeway . . .
in reaching outcomes in case-by-case determinations,"
*Yarborough* v. *Alvarado*, 541 U. S. 652, 664 (2004) (plural-
ity opinion), AEDPA does not require state and federal
courts to wait for some nearly identical factual pattern
before a legal rule must be applied. Cf. *Wright* v. *West*,
505 U. S. 277, 308–309 (1992) (KENNEDY, J., concurring in
judgment).

In the case before us there is no indication the atmos-
phere at respondent's trial was one of coercion or intimida-
tion to the severe extent demonstrated in the cases just
discussed. The instant case does present the issue
whether as a preventative measure, or as a general rule to
preserve the calm and dignity of a court, buttons proclaim-
ing a message relevant to the case ought to be prohibited
as a matter of course. That rule has not been clearly
established by our cases to date. It may be that trial

judges as a general practice already take careful measures to preserve the decorum of courtrooms, thereby accounting for the lack of guiding precedents on this subject.

In all events, it seems to me the case as presented to us here does call for a new rule, perhaps justified as much as a preventative measure as by the urgent needs of the situation. That rule should be explored in the court system, and then established in this Court before it can be grounds for relief in the procedural posture of this case.

For these reasons, I concur in the judgment of the Court.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–785

———————

## THOMAS L. CAREY, WARDEN, PETITIONER *v.* MATHEW MUSLADIN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[December 11, 2006]

JUSTICE SOUTER, concurring in the judgment.

In this habeas proceeding, a federal court may not set aside the state judgment sustaining Musladin's conviction without finding it contrary to, or an unreasonable application of, clearly established federal law. 28 U. S. C. §2254(d)(1). While the ground between criteria entailed by "clearly established" and "unreasonable application" may be murky, it makes sense to regard the standard governing this case as clearly established by this Court. We have a number of decisions dealing with threats to the fundamental fairness of a criminal trial posed by conditions in (or originating in) the courtroom, see, *e.g.*, *Holbrook* v. *Flynn*, 475 U. S. 560 (1986); *Estelle* v. *Williams*, 425 U. S. 501 (1976); *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966); *Estes* v. *Texas*, 381 U. S. 532 (1965), and the two most recent ones agree on a general formulation harking back to *Estes*, *id.*, at 542–546: the question is whether the practice or condition presents "'an unacceptable risk . . . of impermissible factors coming into play'" in the jury's consideration of the case. *Flynn*, *supra,* at 570 (quoting *Williams*, *supra,* at 505). The Court's intent to adopt a standard at this general and comprehensive level could not be much clearer.

As for the applicability of this standard, there is no serious question that it reaches the behavior of spectators.

The focus of the later cases is on appearances within the courtroom open to the jurors' observation. There is no suggestion in the opinions, and no reason to think now, that it should matter whether the State or an individual may be to blame for some objectionable sight; either way, the trial judge has an affirmative obligation to control the courtroom and keep it free of improper influence. *Sheppard*, *supra,* at 363. And since the *Williams-Flynn* standard is a guide for trial judges, not for laypersons without schooling in threats to the fairness of trials, its general formulation is enough to tell trial judges that it applies to the behavior of courtroom visitors.

Nor is there any reasonable doubt about the pertinence of the standard to the practice in question; one could not seriously deny that allowing spectators at a criminal trial to wear visible buttons with the victim's photo can raise a risk of improper considerations. The display is no part of the evidence going to guilt or innocence, and the buttons are at once an appeal for sympathy for the victim (and perhaps for those who wear the buttons) and a call for some response from those who see them. On the jurors' part, that expected response could well seem to be a verdict of guilty, and a sympathetic urge to assuage the grief or rage of survivors with a conviction would be the paradigm of improper consideration.

The only debatable question is whether the risk in a given case reaches the "unacceptable" level. While there is a fair argument that any level of risk from wearing buttons in a courtroom is unacceptable, two considerations keep me from concluding that the state court acted unreasonably in failing to see the issue this way and reverse the conviction. First, of the several courts that have considered the influence of spectators' buttons, the majority have left convictions standing. See, *e.g.*, *State* v. *Speed*, 265 Kan. 26, 47–48, 961 P. 2d 13, 29–30 (1998); *State* v. *Braxton*, 344 N. C. 702, 709–710, 477 S. E. 2d 172, 176–177

(1996); *State* v. *Lord*, 128 Wash. App. 216, 219–223, 114 P. 3d 1241, 1243–1245 (2005); *Nguyen* v. *State*, 977 S. W. 2d 450, 457 (Tex. App. 1998). I am wary of assuming that every trial and reviewing judge in those cases was unreasonable as well as mistaken in failing to embrace a no-risk standard, and so I would find it hard to say the state judges were unreasonable in this case, given the lack of detail about the buttons' display. Second, an interest in protected expression on the part of the spectators wearing mourners' buttons has been raised, but not given focus or careful attention in this or any other case that has come to our notice. Although I do not find such a First Amendment interest intuitively strong here, in the absence of developed argument it would be preferable not to decide whether protection of speech could require acceptance of some risk raised by spectators' buttons.

For these reasons, I think Musladin has not shown the state judge's application of our law to be unreasonable, and on that ground concur in the Court's judgment.