REINHARDT, Circuit Judge,
concurring:
I concur fully in Judge Murguia’s opinion for the court. I also agree generally with Judge Bybee that our decision-making would be aided significantly if the California Supreme Court were to explain more clearly the basis for its summary denials. Even more important, I would urge the California Supreme Court to specify in its opinions whether it is deciding on the merits any or all of the questions of federal constitutional law that are raised in the case before it, and identify the constitutional basis of all such claims that it is denying, if any.
I write separately, however, to urge the California Supreme Court to take a slightly different approach to questions of federal constitutional law in view of recent decisions of the United States Supreme Court that have placed an almost impossible burden on state courts: to be the final decision-maker in an overwhelming number of cases involving fundamental constitutional rights of criminal defendants. Although recognizing that the California Supreme Court “disposes of close to 10,000 cases a year, including more than 3,400 original habeas corpus petitions,” Harrington v. Richter, 562 U.S. 86, 99, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the United States Supreme Court has virtually eliminated the ability of federal courts to enforce the Constitution when reviewing state court convictions, holding instead that under AEDPA federal courts must defer to state court decisions regarding questions of federal constitutional law, even though the state courts often have neither the time nor the resources to fully and carefully consider those questions or even to explain their rulings.
Hamstrung as the federal courts now are as a result of these post-AEDPA decisions, state supreme courts have become, at least for the time being, the last safeguard of the United States Constitution in the vast majority of criminal cases, and the last guardian against constitutional violations resulting from deliberate actions of state and local law enforcement and other *873 officials. The failure or inability of state supreme courts to carefully scrutinize lower state court decisions involving claims of federal constitutional error will, in the absence of some modification to the present process, leave without a remedy numerous individuals who have been deprived of their fundamental rights. It is an unfortunate and overwhelming burden that the Supreme Court has, perhaps unwittingly, placed upon state courts, but I would hope that those courts, especially California’s, will find a way to help ensure that our Constitution will nevertheless be enforced and that justice will be achieved in all cases.
}j{ íj{ % íjí s-i ifc
It is no secret that the United States Supreme Court has severely limited the ability of federal courts to grant habeas relief ever since the passage in 1996 of the Antiterrorism and Effective Death Penalty Act (“AEDPA”). It has done so by interpreting that statute in exceedingly narrow, and in my view, exceedingly unfortunate, ways. AEDPA, which was adopted at the urging of President Bill Clinton in the immediate wake of the Oklahoma City bombing — purportedly as a means of com-batting domestic terrorism, but coincidentally during a presidential election year— prohibits federal courts from granting ha-beas relief on issues that state courts have addressed, unless the state court decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d). Although AEDPA itself limits federal review of state convictions, the Supreme Court’s increasingly restrictive interpretation of that provision has gone well beyond the face of the statute to virtually eliminate meaningful federal review.
The Supreme Court’s restrictions on the ability of federal courts to protect the constitutional rights of criminal defendants in state proceedings began in 2000 with its decision in Williams v. Taylor. 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). There, the Court explained that federal courts cannot grant habeas relief even if a constitutional violation is clear under established circuit court law unless the constitutional question at issue has been decided by a holding of the Supreme Court. See id. at 403-06, 412, 120 S.Ct. 1495. Not only must the Supreme Court have previously decided the constitutional question at issue, but the “precise contours” of the rule must have been established by the Supreme Court. See Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Further, slight factual differences between cases have been enough for the Court to determine that no “clearly established” law existed on a particular question. See Carey v. Musladin, 549 U.S. 70, 75-77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006); see also White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1706-07, 188 L.Ed.2d 698 (2014); Knowles v. Mirzayance, 556 U.S. 111, 121, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009). The Supreme Court, of course, hears only about 80 cases per year, most of which are not criminal cases, and it therefore addresses applications of constitutional law in that area far less frequently than circuit courts. Moreover, it generally does not consider cases when the circuit courts are in agreement and no conflict exists. Thus, in those instances in which developments in the law are generally agreed upon, there is likely to be no clearly established Supreme Court law at all, simply because the law is so clear as not to require intervention by the Court. For these reasons and others, although a constitutional violation may be clear, federal courts will often be unable to grant habeas relief as there is no “clearly established” Supreme Court law governing the question — certainly a counter-intuitive, if not a counterproductive, result.
*874 In addition to the restrictive “clearly established” Supreme Court law doctrine, Williams began a march by the Supreme Court toward a narrow and regressive definition of the phrase “unreasonable application.” In that case, the Court held that federal courts may not grant relief even though the state courts erroneously applied clearly established Supreme Court law. Rather, it said, any erroneous application of the Constitution must also be objectively unreasonable. See Williams, 529 U.S. at 410-13, 120 S.Ct. 1495. To many judges’ great surprise, the Court then determined that this standard was not met even if federal courts had a definite and firm conviction that the state court had erroneously applied clearly established.Supreme Court law. See Andrade, 538 U.S. at 75, 123 S.Ct. 1166. Subsequently, the Court held that a decision could be objectively unreasonable only “in cases where there is no possibility fairminded jurists could disagree that the state court’s decisions conflicts with [the Supreme Court’s] precedents.” Richter, 562 U.S. at 102-03, 131 S.Ct. 770 (emphasis added).[1]
Next, the Supreme Court held that if the state court’s rejection of the petitioner’s claim is “unaccompanied by an explanation,” federal courts must attempt to conjure up a plausible, though not necessarily correct, hypothetical basis for the state court’s decision, and, if they can, that will suffice. See id. at 98-99, 131 S.Ct. 770; Johnson v. Williams, — U.S. -, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013). Thus, even if every imagined basis that the federal court can think of is clearly incorrect, the court may still not grant relief so long as any of the reasons, while wrong, could be deemed “reasonable.” In short, even though an individual has erroneously been deprived of his constitutional rights, he must remain in prison, perhaps for life, or even possibly suffer capital punishment, if there is no pre-existing Supreme Court case that has recognized the specific error involved or if the state court’s ruling, although erroneous, could have been arrived at by a “fairminded jurist,” however that term may be defined. See supra n. 1.
This is only a small sample of the Supreme Court’s restrictive habeas jurisprudence, and its drive toward eliminating federal review does not appear to have yet reached its limit. In Cullen v. Pinholster, the Supreme Court held that federal courts must not only defer to all “reasonable” though erroneous state court decisions, but that in determining whether a decision was reasonable, federal courts must ignore all evidence that had not been presented initially to the state court. 563 U.S. 170, 181-85, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). This decision was not only based on an unprecedented interpretation of AEDPA, but it constrains federal courts’ ability to correct egregious constitutional violations when state courts, as in Pinholster, refuse to hold evidentiary hearings on federal constitutional issues or when petitioners previously had incompetent representation which failed to properly develop the record before the state courts.[2]
*875 Just last year, the Supreme Court reversed this court for granting habeas relief in a case in which there had been an egregious constitutional violation relating to the exclusion by the prosecution of all minority members from a jury that sentenced a young Hispanic man to death. Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 192 L.Ed.2d 323 (2015). The defendant in that case challenged this systematic exclusion of minority jurors, but neither he nor his counsel was allowed to be present when the prosecution provided purportedly race-neutral reasons for its actions to the judge. Despite the blatant deprivation of due process, a bare majority of the United States Supreme Court held that under AEDPA no relief could be granted by a federal court because “a fair-minded jurist could agree” with the state court’s determination that the error was harmless. See Ayala, 135 S.Ct. at 2198-99, 2203. Again, of course, that appears to mean that even if the state court ruling was in actuality contrary to the dictates of the Constitution, as surely it was,[3] federal courts are powerless to enforce defendants’ fundamental rights if some, even a small minority of, “fairminded jurists” might disagree.
Ayala is illustrative of the frustrations many federal jurists have with the current habeas system. As the Supreme Court has repeatedly recognized, state appellate courts face heavy caseloads that often prevent them from fully analyzing defendants’ claims of federal constitutional violations or even from explaining their reasons for denying them. See Williams, 133 S.Ct. at 1095-96; Richter, 562 U.S. at 99, 131 S.Ct. 770. Strangely, the Court has even gone so far as to justify deference to inadequate state courts’ decisions on the ground that those courts do not have the time to write considered opinions. See, e.g., Williams, 133 S.Ct. at 1095-96. Recently, the Court has told us that federal courts may ordinarily grant habeas relief only when confronted with flagrant and “extreme malfunctions” of the state court system. See Richter, 562 U.S. at 102-03, 131 S.Ct. 770. As a result, there is now a large body of constitutional violations that federal courts must overlook and are without authority to remedy, even in cases in which the state courts are unequipped to properly do their job.
$ ^ ^
Clearly, the state courts are not to blame for this unhappy state of constitutional affairs. One can only sympathize, for example, with the plight of the California Supreme Court with its massive potential caseload and severely-strained resources. Nevertheless, perhaps what was not so long ago the most innovative court in the nation will once again be able to provide *876 national leadership when it considers the problem of the untold numbers of habeas petitions raising substantial claims of federal constitutional violations and the current unavailability of the federal courts to help review these claims. Without a new approach, even clearly erroneous constitutional decisions of state courts will remain uncorrected and leave defendants without the check on constitutional error that until recently the federal courts provided.
The Supreme Court’s extreme deference to state court decisions in AEDPA cases -is due, primarily to its concern about comity and federalism. The states may, however, be able to accommodate that concern by making some adjustments to their decision-making process. Perhaps the Court’s recent decisions limiting federal habeas review will inspire the California Supreme Court to develop creative methods of alleviating additional miscarriages of justice. After all, the states are the laboratories of experimentation, even in today’s judicial systems. One approach to attempting to ensure the needed added protection of constitutional rights might be for the California Supreme Court to experiment with certifying individual dispositions which it believes should not be afforded the extraordinary deference provided by AED-PA because it or the state court of appeal was compelled to reject the constitutional challenge without conducting a full analysis or preparing a thorough written opinion. Similarly, the state courts of appeal could certify some of their decisions for non-AEDPA review for whatever reasons they deem appropriate. Additionally, the California Supreme Court could certify particular categories of cases which it believes would benefit substantially from such federal review, for example, death penalty cases, cases involving sentences of life without parole, certain types of cases involving youthful offenders, or even cases in which the last reasoned decision was made by a superior court. Certainly such a system would be preferable to limiting federal courts to correcting “extreme malfunctions” in the state court system and ignoring all violations of the rights of individuals that are non-systemic or about which there is no possibility that a reasonable judge could disagree.[4]
I cannot predict whether the United States Supreme Court would accept a system of certification by state courts and thereby permit full and fair federal review of cases that in the judgment of the state courts warrant such treatment. I would hope, however, that such certifications would be recognized if only out of respect for the concerns of the affected states. Doing so would certainly be consistent with the Court’s interest in comity and federalism and would encourage the state and federal systems to work together once again to enforce the Constitution in a just and orderly manner, an objective surely to be desired by all.
In sum, as of now, the role of the federal courts- in habeas cases has been eviscerated and federal judges have been compelled to say (perhaps in contravention of their oath of office): “I know this result is unfair, unjust, and unconstitutional, but I have been told that I must nevertheless defer to the view of the state courts— courts that may have had neither the time nor resources to fully review the constitutional errors involved.” One can hope, however, that the overwhelmed state courts, recognizing these facts, will find ways to make certain that individuals who may not have received fair trials or just sentences in the state court system are treated as the Constitution envisions — that they are afforded a full and fair review of their constitutional claims by courts fully staffed *877 and with the resources necessary to protect their constitutional rights.

. This last holding is indeed puzzling. The Supreme Court provided no guidance with respect to how one might determine whether a jurist is, in fact, “fairminded.’' Indeed, as Justice O’Connor noted in Williams, defining “unreasonable application” by reference to reasonable jurists is not only “of little assistance to the courts that must apply” AEDPA, but is also "misleading.” See Williams, 529 U.S. at 409-10, 120 S.Ct. 1495. That is because in every habeas case at least several of the nation's presumably fairminded jurists have made the decision not to grant relief, and therefore, every issue has already been subject to at least some disagreement among fairminded jurists.

. One narrow exception to this constraint exists. Federal courts may consider new evidence in order to determine whether a peti *875 tioner can establish cause and prejudice to excuse the procedural default of an ineffective assistance of trial counsel claim under Martinez v. Ryan, - U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). See Dickens v. Ryan, 740 F.3d 1302, 1319-21 (9th Cir. 2014).

. As Justice Sotomayor eloquently explained in her dissent, "secret decisions based on only one side of the story will prove inaccurate more often than those made after hearing from both sides.” Ayala, 135 S.Ct. at 2212 (Sotomayor, J. dissenting) (internal quotations omitted). "Absent an adversarial presentation, a diligent judge may overlook relevant facts or legal arguments in even a straightforward case,” let alone a capital case like Ayala’s "where jury selection spanned more than three months, involved more than 200 prospective jurors, and generated a record that is massive by any standard.” Id. at 2212-13. By prohibiting Ayala’s lawyers from arguing at the hearing, the trial court prevented them from challenging the credibility of the prosecution’s purportedly race-neutral reasons for striking minority jurors, which raised grave doubt "as to whether the outcome of these proceedings — or the appellate courts' review of them — would have been the same had counsel been present.” Id. at 2213.

. As any student of the law is aware, dissent is a fundamental part of the legal system, and “fair-minded debate” is present in nearly ev-, ery, if not every, case.