PER CURIAM.
This opinion fulfills our constitutional obligation to determine the State’s need for additional judges in Fiscal Year 2013/2014 and to certify our “findings and recommendations concerning such need” to the Legislature.[1] Certification is “the sole mechanism established by our constitution for a systematic and uniform assessment of this need.” In re Certification of *1272 Need for Additional Judges, 889 So.2d 734, 735 (Fla.2004).
TRIAL COURTS
The Florida Supreme Court continues to use a weighted caseload system as a primary basis for assessing judicial need for the trial courts.[2] Using objective standards, this Court has examined case filing and disposition data, analyzed various judicial workload indicators, applied a three-year average net need, and considered judgeship requests submitted by the lower courts. Applying this methodology, this Court certifies the need for sixty-three judgeships statewide, sixteen of which are in circuit court and forty-seven in county court as detailed in the attached appendix.
We observe that state revenues, while gradually improving, continue to lag, thereby creating competition between funding new judgeships and attending to other critical state needs. Yet, as we have noted in previous opinions, our judges and court staff continue to work conscientiously to administer justice and resolve disputes promptly. They do so despite a demonstrated need for new judges and with a smaller staffing complement.
Our most recent analysis indicates a slight increase in probate and circuit civil filings. Felony, domestic relations, juvenile delinquency, and juvenile dependency filings, however, have decreased. The reduction in felony filings corresponds to a decline in arrests, as reported by the Florida Department of Law Enforcement.[3] Also, while it may be too soon to indicate a sustained downward trend, recent juvenile justice reforms undertaken by the Florida Department of Juvenile Justice may also be resulting in fewer juvenile delinquency filings.[4]
Notwithstanding the decreases to certain filing categories, our three-year average net need analysis continues to indicate that additional judgeships are necessary in our circuit courts. This three-year average net need reflects sustained workload over a multi-year period.
A number of workload trends are affecting court operations throughout the state. Several of the chief judges cited problems of fewer staff to assist with case processing matters, substantial pending caseloads, high jury trial rates, reduced clearance rates, and statutory requirements requiring additional hearings for certain case types in civil, criminal, and family law as trends contributing to judicial workloads. Other chief judges noted the effect of self-represented litigants on court time and resources and the protracted delays experienced by parties in scheduling hearings. Collectively, these factors contribute to court delay.
Our judges continue to absorb the work previously performed by case managers, law clerks, magistrates, and other supplemental support staff lost in the budget reductions of recent years.[5] Most of these *1273 positions provided direct case management, legal research, and adjudicatory support to our judges. The consensus among chief judges is that the loss of support staff translates into slower case processing times, crowded dockets, and long waits to access judicial calendars.
Several of our chief judges note, in particular, the long waits associated with obtaining hearing times. In some jurisdictions, dockets are so full that it takes several weeks to schedule a hearing. Similarly, judges must schedule lengthy jury trials months in advance. These conditions are additional indicators of an under-resourced court system. Moreover, chief judges continue to report concerns expressed by judges that they are less able to devote adequate time to hearings due to significant workload.
Workload associated with the residential mortgage foreclosure crisis continues to impede disposition times and rates in our circuit civil divisions. Due to the severity and protracted nature of the crisis, our trial courts continue to struggle with heavy pending caseloads and the slow resurgence of foreclosure filings. Further, this crisis has had a ripple effect on the workload of other court divisions as chief judges and administrative judges allocate limited court resources to address demand. In recognition of this protracted crisis the Legislature, through the Foreclosure Backlog Reduction Initiative, provided dedicated funding for Fiscal Year 2012/2013 that has enabled the court system to secure the services of additional senior judges and case managers. Resources from the national mortgage settlement agreement have also been made available to assist the courts in addressing the foreclosure case backlog. This Court is grateful for this funding. The case managers and senior judges made available through this funding are in place to make a difference in reducing the foreclosure backlog throughout the state.
County court workload remains high. Unlike circuit court, which has witnessed a slight decrease in judicial need, county court judicial need is significant and holding steady. In select jurisdictions, some chief judges report that credit card debt cases and landlord tenant cases are increasing county court workload. Moreover, the loss of civil traffic infraction hearing officers in county court continues to increase county judge workload as these cases are shifted back to the judicial dockets throughout the state. These factors contribute to a high county court judicial need.
Another sustained trend in both county and circuit court reported by the chief judges is that self-represented litigants continue to have an impact on Florida’s court system. All divisions are experiencing an increase in self-represented litigants. Frequently, self-represented litigants are unprepared for the rigors of presenting evidence, following rules of procedure, and generally representing themselves in court. Consequently, they often require enhanced judicial involvement, which entails lengthier hearings, rescheduled hearings, and court delay.
DISTRICT COURTS OF APPEAL
The Second District Court of Appeal requests two additional judgeships, citing its current averaged weighted judicial workload of 815 cases per judge and Florida Rule of Judicial Administration 2.240(b)(2)(B), which provides that a presumption of need arises “where the relative weight of cases disposed on the merits per judge would have exceeded 280 after application of the proposed additional judge(s).” As with last year’s opinion, we have used a three-year average of weighted dispositions per judge which is consis *1274 tent with our discretion under Florida Rule of Judicial Administration 2.240.
A number of factors contribute to the overall high workload in the Second District, including increases within the civil, criminal post-conviction, other criminal, juvenile, and family case categories. The chief judge of the Second District also cites a backlog of pending cases noting a twenty percent increase in their pending caseload since Fiscal Year 2007/2008.
Clearance rate trends also demonstrate the backlog building in the Second District. In Fiscal Year 2011/2012, there were 6,834 cases filed and 6,018 cases disposed, a clearance rate of eighty-eight percent. For the same period, with respect to criminal judgment and sentence cases, there were 1,720 cases filed and 1,248 cases disposed, reflecting a clearance rate of seventy-three percent.
The Second District also notes that despite high caseloads and a reduction in resources including personnel, the judges and staff have made every effort to properly execute their responsibilities. However, they do so knowing that trying to absorb this increased workload limits the time available for the consideration of each case and the writing of opinions. This Court shares the concerns of the chief judge of the Second District and remains concerned about a diminished quality of justice resulting from high workload and a loss of resources.
While the Second District Court of Appeal has requested that two additional district court judges be certified, our analysis of the three-year weighted dispositions per judge average indicates that they do not meet the threshold of 280 weighted dispositions per judge after a second judge is added. Therefore, we certify the need for one additional district court judge in the Second District for Fiscal Year 2013/2014.[6]
CONCLUSION
We have conducted both quantitative and qualitative assessments of judicial workload. Using the case weighted methodology and the application of other factors identified in Florida Rule of Judicial Administration 2.240, we certify the need for sixty-three additional trial court judges in Florida, consisting of sixteen in circuit court and forty-seven in county court, as set forth in the appendix to this opinion, and one additional district court judge in the Second District Court of Appeal.
Many of the workload trends we identified in last year’s certification opinion remain today. In response, our courts continue to proactively manage their dockets to ensure that the administration of justice is not diminished. Yet despite these measures, we remain concerned that the timeliness and quality of justice are being adversely affected.
We appreciate recent action by the Legislature to stabilize court operations funding, and help the courts to address foreclosure case backlog issues. We recognize that the funding of new judgeships is an expensive proposition, especially during difficult economic times with diminished state revenues. There are many competing needs within state government and our court system. We have carefully weighed the need for additional judges and for the operational and facilities needs within the trial and appellate courts. We encourage the Legislature to first fund the Judicial Branch Fiscal Year 2013/2014 Legislative Budget Request as there are significant facility and operational issues contained *1275 therein which merit funding. To the extent funding is available, we urge the Legislature also to consider our certified need for additional judges.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur,
APPENDIX
Trial Court Need
[[Image here]]

. Article V, section 9 of the Florida Constitution provides in pertinent part:
Determination of number of judges. The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. See Fla. R. Jud. Admin. 2.240.

. Felony arrest rates as reported by the Florida Department of Law Enforcement dropped six and one-half percent from 2010 to 2011.

. See Rick Scott, Governor of Florida, Reform Underway at Florida's Juvenile Justice Agency (January 3, 2012), (available online at http:// www.flagov.com).

.When the case weights were originally developed in 1999 and updated in 2007, they incorporated the availability of supplemental resources to assist judges with case processing matters. It is reasonable to conclude that the loss of these supplemental positions (i.e., case managers, law clerks, and magistrates) may increase the case weights if not restored prior to the next case-weight update.

. One additional judgeship in the second district will place its weighted dispositions per judge at 294. A certification of two judge-ships would place its weighted dispositions per judge at 276, four below the threshold.